IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   17-cv-01496-WYD-MEH

PHOENIX ENTERTAINMENT PARTNERS, LLC, a North Carolina LLC,

    Plaintiff,

v.

MICHAEL T. SULLIVAN; and
MTS PRODUCTIONS INC., a Colorado corporation;

    Defendants.

---

## ORDER ON MOTION TO DISMISS

### I.   Introduction

THIS MATTER is before the Court on Defendants Michael T. Sullivan's and MTS Productions, Inc.'s Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) (ECF No. 17), filed September 7, 2017.  Plaintiff Phoenix Entertainment Partners, LLC filed a Response (ECF No. 20) on September 28, 2017, and Defendants Sullivan and MTS Productions Inc. filed a Reply (ECF No. 23) on October 11, 2017.  Since the filing of Defendants' Motion to Dismiss, Plaintiff has filed two Notices of Voluntary Dismissal of Party (ECF Nos. 30 and 33), filed on February 13, 2018 and February 28, 2018, respectively.  Thus, Defendants Broadways, Inc., and J.A.C.K. GONSKA INC., have been dismissed from this action.  (*See* Orders of Dismissal, ECF Nos. 31 and 36).

### II.   Background

Plaintiff Phoenix Entertainment Partners, LLC ("Phoenix"), brings claims of

trademark infringement, unfair competition, and copyright infringement, against Defendants MTS Productions, Inc. ("MTS"), and Michael T. Sullivan ("Sullivan"), stemming from a regular series of karaoke shows hosted by Defendants MTS Productions and Sullivan. Phoenix alleges that MTS and Sullivan engaged in copyright infringement by making copies of and distributing karaoke accompaniment tracks, which are subject to copyrights owned by Phoenix. Compl. ¶ 1. Additionally, Plaintiff alleges that Defendants engaged in trademark infringement by using Phoenix's federally registered trademarks and service marks without authorization in the course of providing commercial karaoke entertainment services and related ancillary services, all without authorization. *Id.* Phoenix is a North Carolina limited liability company having its principal place of business in Pineville, North Carolina. *See* ECF No. 1, Compl. ¶ 7. Defendant MTS Productions Inc., is a Colorado corporation that operates a mobile entertainment business, which provides karaoke-related services. Compl. ¶ 8. Defendant Michael T. Sullivan, a Colorado resident, owns and operates MTS, and personally participates in MTS's mobile entertainment business. Compl. ¶ 9.

The allegations of the Complaint center on karaoke shows facilitated by Defendants. According to Plaintiff, "[t]he basic premise of a karaoke show is that the venue hosting the show provides patrons with access to a sound system and specially prepared karaoke accompaniment tracks, so that individual patrons may perform for the crowd." *Id.* at ¶ 15. A "karaoke accompaniment track" is an audiovisual work comprising a re-recorded version of a popular song without the lead vocals synchronized to a graphical component containing a lyric display, cueing information, and other information. *Id.* at ¶ 16. Plaintiff provides that "when a karaoke accompaniment track

2

is publicly performed, the graphical component is displayed to both the patron who is performing and may be displayed to the crowd as well." *Id.* at ¶ 17. Plaintiff alleges that venues offer karaoke entertainment in exchange for patronage of their establishment and the purchase of food and beverages. *Id.* at ¶ 18. Mobile entertainment operators, including MTS and Sullivan, are hired by venues to make karaoke tracks available for patrons' use and to provide karaoke entertainment services on the venues' behalf. *Id.* at ¶ 20.

Plaintiff Phoenix is the owner of SOUND CHOICE® ("Sound Choice"), a federally registered trademark. Phoenix alleges that it licenses and distributes karaoke tracks and, "primarily through licensees, provides karaoke entertainment services." *Id.* at ¶ 21. Similarly, Phoenix owns CHARTBUSTER KARAOKE® ("Chartbuster"), a federally registered trademark, in connection with which Phoenix distributes karaoke tracks. *Id.* at ¶ 28. Phoenix is also the owner of the Sound Choice federal service mark registration, acquired by from Slep-Tone, Plaintiff's predecessor-in-interest, on February 15, 2015. *Id.* at ¶ 42; *see* Annex B. Phoenix is also the owner of the Chartbuster federal service mark, by virtue of an assignment instrument from Piracy Recovery, LLC, dated November 10, 2015. *Id.* at ¶¶ 52–54; *see* Annex C.

Phoenix is also the sole owner of Sound Choice Entertainment, LLC, a Texas limited liability company ("SCE"), "that is engaged in the business of providing karaoke entertainment services to venues in various locations around the United States, and which is preparing to enter the Colorado market." *Id.* at ¶ 51. Phoenix does not allege that they do, or have begun to, provide such karaoke entertainment services in Colorado.

Phoenix is in the business of licensing the Sound Choice marks for karaoke

3

entertainment services. *Id.* at ¶ 46. Phoenix further alleges that karaoke operators are required to acquire a license from Phoenix for the right to display the Sound Choice mark in connection with their commercial karaoke shows. *Id.* at ¶ 47.

Phoenix alleges that more than 70% of all accompaniment tracks played at commercial karaoke shows in the United States are either Sound Choice or Chartbuster Karaoke branded tracks. *Id.* at ¶ 30. Phoenix alleges that Sound Choice branded tracks, alone, exceed 50% of the market share. *Id.* Plaintiff maintains that Sound Choice's popularity derives from the quality of the sound and its highly accurate singing cues. *Id.* at ¶¶ 31, 32. Thus, Plaintiff's claim that the association of the Sound Choice brand with a mobile entertainment operator's karaoke business provides them a perception of legitimacy and professionalism in the marketplace. *Id.* at ¶ 33.

Phoenix claims that Sound Choice and Chartbuster tracks are frequently and illicitly duplicated and shared among karaoke professionals, and that this distribution allows operators to gain the benefits of the Sound Choice and Chartbuster brands without paying for the right to use them. *Id.* at ¶¶ 34–36.

Phoenix alleges that Defendants MTS and Sullivan repeatedly display the Sound Choice Marks in connection with supplying their karaoke entertainment services, "often dozens of times over the course of a typical four-hour karaoke show." *Id.* at ¶ 57. Phoenix further alleges that because of the "well-known association of the Sound Choice Marks with karaoke entertainment services, the display of the Sound Choice Marks in connection with the services, regardless of the particular song being played, acts as a general advertisement for the services as well as an indicator of the quality of the services being provided." *Id.* at ¶ 58. Plaintiff asserts that the frequent, repeated

4

display of the Sound Choice Marks during Defendants' shows is likely to confuse patrons of Phoenix's sponsorship or approval of their services. *Id.* at ¶¶ 59–64. As a result of Defendants' actions, Phoenix alleges that it has been damaged through the loss of revenues through the sale or licensing of its services, in addition to Phoenix's inability to control the quality of services provided with the Sound Choice Marks. *Id.* at ¶ 65.

With respect to Plaintiff's copyright claims, Plaintiff claims that Defendants infringed on its Sound Choice copyright when they copied the audiovisual works. Phoenix is the copyright owner of the audiovisual works listed in Annex A of the Complaint, by virtue of assignment from Piracy Recovery, LLC. *Id.* at ¶ 38. Annex A shows a copyright registration of the sound recording, "Blue" by artist LeeAnn Rimes, registration number SR0000367547. Phoenix alleges that its ownership of this copyright grants it the exclusive rights to reproduce and distribute the work to the public by sale or other transfer of ownership, i.e., rental or lease. *Id.* at ¶ 39. This copyright was registered with the United States Copyright Office prior to the commencement of this action, and prior to Defendants' alleged acts of copyright infringement. *Id.* at ¶ 40. Phoenix notes that "[t]he audiovisual works are the subject of a separate copyright from the copyright in the underlying musical compositions they embody." *Id.* at ¶ 41.

### III.     Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Therefore, "a plaintiff must include enough facts to 'nudge[] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

**IV.    Discussion**

    **A. The Lanham Act**

Plaintiff Phoenix Entertainment asserts claims of trademark infringement, and

6

unfair competition against Defendants under §§ 32 and 43(a) of the federal Lanham Act, 15 U.S.C. §§ 1114, 1125(a). "A 'trademark' is 'any word, name, symbol, or device, or any combination thereof—used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods ....' " *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (quoting 15 U.S.C. § 1127). "The term 'service mark' means any word, name, symbol, or device or any combination thereof ... [used] to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services ...." 15 U.S.C. § 1127. The same criteria govern whether a registered mark for goods or services is infringed. *See* 15 U.S.C. § 1114(1). The Lanham Act's private causes of action for trademark infringement are available to the owners of service marks. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013).

Section 32 of the Act allows the owner of a registered mark to bring an action for infringement against any person who

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of [the] registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive....

15 U.S.C. § 1114(1)(a). Similarly, under § 43(a) the owner of any valid mark, registered or not, may sue any person who

> uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to

7

> cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person....

*Id.* § 1125(a). To prevail on trademark-infringement and unfair competition claims under § 32 and § 43(a) of the Lanham Act, the central inquiry is whether there is a likelihood of confusion. *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir.2013). Plaintiff alleges that Defendants used a reproduction, counterfeit, or copy of the Sound Choice marks in connection with providing karaoke services, and that repeatedly displaying such reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services constitutes trademark infringement. Compl. ¶ 115. Phoenix alleges two distinct types of confusion: (1) confusion as to the origin, sponsorship, or approval of goods—the digital karaoke files; and (2) confusion as to the origin, sponsorship, or approval of services—the karaoke services provided by Defendants.

### B. Count I: Trademark Infringement

#### i. <u>Goods Marks</u>

Defendants argue that the infringement claims against them should be dismissed because Phoenix is actually presenting a copyright claim in trademark infringement clothing, which has been foreclosed by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Plaintiff first notes that its allegations and claims regarding the Chartbuster Mark "in this action is directed only to the use of the mark on the specific work that is the subject of copyright and principally only as an alternative theory of damages," and is thus not part of its trademark claims.

8

(ECF No. 20 at 2). Phoenix contends that *Dastar* does not preclude its infringement claims because Phoenix is alleging that Defendants are infringing on its Sound Choice Marks as service marks, not its trademarks in goods. Specifically, Phoenix argues that Defendants conduct constitutes service mark infringement when the Sound Choice Marks are displayed during Defendants' karaoke show performances, without Phoenix's consent.

Defendants' *Dastar* argument has been before other courts resolving Phoenix's claims of infringement of its registered Sound Choice Marks. See, e.g., *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249–50 (9th Cir. 2017); *Phoenix Entm't Partners, LLC v. Rumsey*, 829 F.3d 817, 822, 828 (7th Cir. 2016); *Phoenix Entm't Partners, LLC v. Happy Hours*, LLC, No. 4:17CV1304 RLW, 2018 WL 704855, at *3 (E.D. Mo. Feb. 2, 2018); *Phoenix Entm't Partners, LLC v. Star Music, Inc.*, No. 16–CV–4078 (PJS/FLN), 2017 WL 3498645, at *2 (D. Minn. Aug. 15, 2017); *Phoenix Entm't Partners, LLC v. Burke*, No. 8:16–cv–3361–T–30JSS, 2017 WL 2634953, at *2 (M.D. Fla. June 9, 2017); *Phoenix Entm't Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 797–99 (S.D. Tex. 2017).

Analyzing the Lanham Act's unfair competition provision, 15 U.S.C. § 1125, the Supreme Court has held that the statutory phrase "origin of goods" must "refer[ ] to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). The concept of origin is "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id.* at 31–32. And, although the Supreme Court was interpreting

the "unfair competition" provision in section 43 of the Lanham Act, the same standard applies to both registered and unregistered trademarks. *See Jordache Enters., Inc. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1484 (10th Cir.1987) (noting that similar tests govern claims under both provisions).

Citing *Dastar*, courts have concluded that claims of an unauthorized use of the content of Phoenix's karaoke accompaniment tracks are essentially claims of unauthorized copying and are not cognizable trademark claims under the Lanham Act. *See Wired for Sound*, 845 F.3d at 1250; *Rumsey*, 829 F.3d at 831; *Star Music, Inc.*, 2017 WL 3498645, *3; *Boyte*, 247 F. Supp. 3d at 799. The opinions make clear that *Dastar* extends to the karaoke context; and as a matter of law, there is no possibility of consumer confusion over the goods mark display. *Boyte*, 247 F. Supp. at 798. As those court's concluded, "[t]he 'routine display' of the Sound Choice goods marks 'during the performance of the tracks' is not trademark infringement." *Id.* (citing *Rumsey*, 829 F.3d at 830).

Although the Court is not bound by these decisions, I find that their reasoning is persuasive. Accordingly, accepting the facts in the Complaint as true, I find that Phoenix has failed to plausibly plead a valid trademark infringement claim as to its Sound Choice goods marks.

### ii. Service Marks

The Supreme Court's ruling in *Dastar* does not extend to the service marks context. *See Boyte*, 247 F. Supp. at 799 (plaintiff's service marks "claims are not controlled by *Dastar*, *Rumsey*, or *Wired for Sound…*"). To plead a valid claim for service mark infringement, Phoenix must allege that Defendants MTS and Sullivan use

10

the Sound Choice Marks in the "sale, distribution, or advertising" of its services and that this "use is likely to cause confusion." 15 U.S.C. § 1114(1)(a). Phoenix alleges that Defendants MTS and Sullivan's repeated display of the Sound Choice Marks during their karaoke show performances, without authorization, constitutes service mark infringement. (ECF No. 20 at 5). Phoenix alleges that Defendants display the mark "often dozens of times over the course of a typical four-hour karaoke show." Compl. ¶ 57. Further, Phoenix alleges that Defendants' "display of the Sound Choice Marks in connection with the services, regardless of the particular song being played, acts as a general advertisement for the services as well as an indicator of the quality of the services being provided." *Id.* at ¶ 58. Phoenix contends that the repeated display of its Sound Choice Marks will cause patrons and consumers to view Defendants' karaoke services as an indicator of the affiliation, connection, or association between Phoenix and Defendants. *Id.* at ¶ 59. Phoenix does not allege, however, that Defendants overtly use the Sound Choice Marks to promote, advertise, or brand their karaoke shows.

In *Boyte*, the district court denied defendants motion to dismiss on Phoenix's service marks claim because Phoenix alleged that it *directly* competed in the Texas market. *Boyte*, 247 F. Supp. 3d at 799–800 (emphasis added). In that case, Phoenix alleged "that Sound Choice Entertainment actively competes in the karaoke-jockey market and uses the Sound Choice name and logo to advertise and brand its karaoke shows." *Id.* at 799. Because Sound Choice Entertainment directly competed with the karaoke jockey defendants in the relevant market, the court held that Phoenix had

11

sufficiently alleged that bar patrons "could be confused about whether sound Choice Entertainment was the company putting on that evening's karaoke show." *Id.* at 800.

*Boyte* is distinguishable because here, Phoenix does not allege that it directly competes in the Colorado market. In fact, Phoenix admits that it, through its company Sound Choice Entertainment, LLC, "provides karaoke entertainment services to venues in various locations around the United States," and merely alleges that it is "preparing to enter the Colorado market," but has not. Compl. ¶ 51. Thus, it is unlikely that bar patrons where Defendants perform their karaoke services will be confused as to whether Phoenix or MTS and Sullivan are putting on the karaoke shows.

In *Star Music*, 2017 WL 3498645 at *3, the court rejected Phoenix's claims that the display of its marks and trade dress during karaoke shows "misled patrons into believing that Phoenix has sponsored or approved the karaoke services." *Id.* The court concluded that "Phoenix's claims of confusion concerning the karaoke services are too speculative," holding that:

> [i]t is theoretically possible that a display of Phoenix's marks and trade dress during a particular karaoke show could lead to confusion over the origin, sponsorship, or approval of the show itself, if, say, every single track played by [defendants] at a show displayed Phoenix's marks and trade dress—and if [defendants] also used Phoenix's marks and trade dress in advertising the show—then it is conceivable that a patron could be misled into believing that Phoenix had something to do with the show. But Phoenix's single generalized allegation about the frequency with which its tracks are played at karaoke shows in the United States is insufficient to state a plausible claim against [defendants].

*Id.*

As noted in *Burke*, "[b]ecause [Phoenix] does not allege that [defendant] markets himself as a "Sound Choice" DJ or in any way uses the "Sound Choice" trademark to

12

promote his karaoke business, the bar patrons have no reason to think that [Phoenix] sponsors his karaoke shows." *Phoenix Entm't Partners, LLC v. Burke*, No. 8:16-CV-3361-T-30JSS, 2017 WL 2634953, at *3 (M.D. Fla. June 19, 2017), *aff'd sub nom. Phoenix Entm't Partners, LLC v. Casey Rd. Food & Beverage, LLC*, No. 17-13043, 2018 WL 1294667, at *2 (11th Cir. Mar. 13, 2018).

Phoenix does not allege that Defendants use the Sound Choice Marks to advertise their services or that Defendants display the mark other than as part of the accompaniment tracks in which it is embedded. Even if, as Phoenix claims, the Sound Choice Marks are displayed dozens of times each show, in association with many different songs, it is unclear how that display does more than identify Phoenix as the source of those individual tracks.

As the Eleventh Circuit recently stated, "[u]nless [defendants] use the Sound Choice mark outside of those tracks, consumers are not likely to be confused about an association, sponsorship, or affiliation between Phoenix and [defendants'] DJ business, or to be confused about the sponsorship, or approval of his services by Phoenix." *Casey Rd. Food & Beverage, LLC*, 2018 WL 1294667, at *2; *see Dastar Corp.*, 539 U.S. at 32–33 ("The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers."); *see also Rumsey*, 829 F.3d at 829 ("That the Sound Choice mark is embedded in the creative content of the karaoke track and is visible to the public whenever the track is played does not falsely suggest that [Phoenix] is endorsing the performance, as the plaintiffs have alleged.").

At most, patrons are likely to be confused about whether Phoenix authorized Defendants MTS and Sullivan to copy and use its accompaniment tracks. The

unauthorized copying and display of a creative work is a copyright claim, however, and not a trademark claim. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432–33 (1984) ("[T]he Copyright Act grants the copyright holder 'exclusive' rights to use and to authorize the use of his work in five qualified ways, including reproduction of the copyrighted work in copies."). And a trademark claim cannot serve as a vehicle for what is really a copyright claim. *See Dastar Corp.*, 539 U.S. at 34 ("[I]n construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright.") (quotation marks omitted); *see also Wired for Sound*, 845 F.3d at 1250 (concluding that Phoenix's "claim is more accurately conceived of as attacking the unauthorized copying, [and] *Dastar* requires us to avoid recognizing a 'species of mutant copyright law' by making such claims cognizable under the Lanham Act"); *see also Rumsey*, 829 F.3d at 824 (same).

For the reasons stated above, I find that Phoenix has failed to plausibly plead a valid service mark infringement claim.

### C. Count II: Unfair Competition

To plead a claim of unfair competition, Phoenix must allege that Defendants MTS and Sullivan's use "is likely to cause confusion" about an "affiliation, connection, or association" between Phoenix and Defendants' services or about the "origin, sponsorship, or approval" of its services by Phoenix. 15 U.S.C. § 1125(a)(1). Again, the only disputed issue is whether there is a likelihood of confusion. *Water Pik, Inc.*, 726 F.3d at 1143.

For the reasons stated above, I find that Phoenix has failed to plausibly plead a

valid unfair competition claim. *See id.* (same standard applies to §§ 32 and 43(a) actions); *Wired for Sound*, 845 F.3d at 1249 (same); *Rumsey*, 829 F.3d at 822 (same); *Slep–Tone Entm't Corp. v. Sellis Enters., Inc.*, 87 F. Supp. 3d 897, 903 (N.D. Ill. 2015) (same).

### D. Count III: Copyright Infringement

Finally, Defendants seek dismissal of Phoenix's claim of copyright infringement. Phoenix alleges that Defendants MTS and Sullivan's conduct in reproducing, copying and distributing the work listed in Annex A of the Complaint, without Phoenix's permission, constitutes copyright infringement under the Copyright Act, 17 U.S.C. § 501. Defendants argue that Phoenix's copyright infringement claim fails because the work listed in Annex A is for a sound recording and not an audiovisual work. (ECF No. 17 at 13).

A copyright infringement claim requires Phoenix to establish both: (1) ownership of a valid copyright; and (2) unauthorized copying by defendants of protected components of the copyrighted material. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir.2009) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Phoenix bears the burden of proof on both elements. *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir.2005)). A Certificate of Registration, if timely obtained, constitutes prima facie evidence of the validity of the copyright. 17 U.S.C. § 410(c); *Autoskill v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir.1993), *cert. denied,* 510 U.S. 916 (1993). Upon presentation of such certificate, the defendant bears the burden to overcome the presumption of validity. *Autoskill,* 994 F.2d at 1487. To rebut the presumption,

15

however, a defendant sued for infringement "must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1196 (10th Cir. 2005) (quoting *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1997)).

Phoenix alleges that it owns a valid copyright in the sound recording listed in Annex A. Phoenix has attached a copy of such copyright registration to the Complaint. (ECF No. 1, Annex A). Because a copyright owner has exclusive rights to reproduce, prepare derivative works, or distribute copies of the copyrighted work, Defendants MTS and Sullivan are required to comply with the Copyright Act to obtain permission to do the same. *See* 17 U.S.C. § 106(1)-(3); 17 U.S.C. § 115; *Palladium Music, Inc.*, 398 F.3d at 1999. Based on the foregoing, I find that Phoenix has plausibly pled a valid claim of copyright infringement.

### V. Conclusion

For the reasons stated herein, it is

ORDERED that Defendants Michael T. Sullivan's and MTS Productions, Inc.'s Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) (ECF No. 17), is **GRANTED in Part and DENIED in Part.** Defendants' Motion to Dismiss is granted to the extent that it seeks dismissal of Claim I and Claim II for trademark infringement and unfair competition. Defendants' Motion to Dismiss is denied to the extent it seeks dismissal of Claim III for copyright infringement.

Dated: March 23, 2018.

BY THE COURT:

/s/ *Wiley Y. Daniel*
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE